UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 15-10148-LTS |
| | ) |
| DAVID JONES. | ) |
| | ) |

ORDER ON MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 598, 609)

October 22, 2020

SOROKIN, J.

David Jones, who is presently serving a sentence for participating in a drug-distribution conspiracy, seeks an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), citing the combination of his health conditions and the present COVID-19 pandemic as extraordinary and compelling reasons justifying his release. Doc. Nos. 598, 609.[1] The government opposes his request. Doc. No. 612. For the following reasons, Jones's motion is DENIED.

As a preliminary matter, Jones sought and was granted leave to file his compassionate release motion under seal, based on his representation that it "contain[ed] sensitive and personal medical information." Doc. No. 607; Doc. No. 608. The motion, however, is unaccompanied by medical records, which often support such motions and contain detailed personal and medical information that customarily is sealed. Rather, Jones supports his motion with a declaration prepared by a doctor who reviewed and generally described aspects of his medical records. Doc. No. 609-1. The motion and the declaration contain only a handful of passages that are redacted from the public filings, and those passages do little more than name the medical conditions

---

[1] Jones filed a motion on his own behalf, Doc. No. 598, then the Court appointed counsel, Doc. No. 600, who filed a supplemental motion three months later, Doc. No. 609.

which form the basis for Jones's request for release.  Compare Doc. No. 609 at 1, 4, and Doc.

No. 609-1 at 1-2, 6-8, 10, with Doc. No. 609-7 at 1, 4, and Doc. No. 609-8 at 1-2, 6-8, 10.

Though the government has not objected to Jones's redactions, "the public's right of

access to [judicial records] is vibrant," and the Court is bound to consider whether it is

outweighed here such that continued sealing is appropriate.  Siedle v. Putnam Invs., Inc., 147

F.3d 7, 10 (1st Cir. 1998).  Here, the Court finds that this balance tips decisively in favor of the

public's right of access.  Jones asks the Court to seal or redact references to the very facts that

are at the heart of his motion.  Though he argues his medical conditions justify his release from

custody, he urges the Court to keep references to those conditions shielded from the public.

Moreover, the specific conditions at issue are commonly referenced publicly in pleadings and

decisions, including before this Court.[2]  E.g. United States v. Browne, No. 14-cr-10369, 2020

WL 3618689, *1 (D. Mass. July 2, 2020) (recounting defendant's "history of treatment for

hypertension, obesity, diabetes," and other conditions).  In these circumstances, Jones has not

demonstrated any justification for sealing that is sufficient to overcome the "strong and sturdy"

presumption in favor of public access.  Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830

F.2d 404, 410 (1st Cir. 1987).  **Accordingly, the Clerk shall UNSEAL Documents 609-7 and**

**609-8 in this matter.**

Now, to the merits.  On December 6, 2016, Jones pleaded guilty to conspiring to

distribute cocaine base, cocaine, and heroin in violation of 21 U.S.C. § 846.  Doc. No. 290; see

Doc. No. 3 (indicting Jones and eight other defendants for this conspiracy).  The charge arose

from Jones's role overseeing three locations at which a substantial amount of drugs were stored

---

[2] Indeed, Jones referenced his own "high blood pressure issues" in his publicly filed pro se
motion that preceded his counseled submission.  Doc.  No. 598 at 1.

and distributed by the Columbia Point street gang.  This was not Jones's first conviction for a drug-distribution offense.  At the time of his arrest on this charge, he had four prior state-court convictions for distributing either cocaine or cocaine base—in 1998, 1999, 2007, and 2011.[3]

Due to the amount of drugs involved in the offense and Jones's criminal history (which qualified him as a career offender), the advisory sentencing guidelines range was 262 to 327 months' imprisonment.  The Court imposed the statutory mandatory minimum sentence of ten years' imprisonment, with five years of supervised release, on February 28, 2017.  Doc. No. 336. To date, Jones has served approximately 64 months of his sentence.  According to the Bureau of Prisons, his expected release date is February 3, 2024.  He is presently housed at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey.

Jones claims he "suffers from a collection of medical conditions," that "each condition standing alone warrants concern," and that "[t]aken together" they "form a potentially lethal landing pad for the coronavirus," a risk he argues is substantially heightened in a prison setting. Doc. No. 609-7 at 4.  On this basis, he filed the instant motion asking the Court to release him, thereby reducing his sentence to time served, with his five years of supervised release to begin now under the conditions previously imposed.  Id. at 7.

Jones's request arises under a provision in 18 U.S.C. § 3582(c) that allows for modification of imposed terms of imprisonment if "extraordinary and compelling reasons warrant such a reduction."  The government has opposed Jones's motion, challenging his ability to satisfy each of the three factors governing requests for sentence reductions.[4]  Doc. No. 612.

---

[3] He also was convicted in 2006 of threatening and assaulting the mother of one of his children.
[4] The government does not contest Jones's assertion that this Court may consider his request. See Doc. No. 609 at 2 (citing 18 U.S.C. § 3582(c) and outlining Jones's request to the warden in June or early July 2020, the warden's denial and instructions to resubmit with additional information on July 13, 2020, Jones's renewal of his request on July 16, 2020, and the absence of

Jones filed a brief reply, criticizing the medical care he has received at FCI Fort Dix, claiming

that conditions there are unsafe (both in Jones's housing unit and in the prison generally),

suggesting the government relies on "stale" convictions and ignores that he "merely dealt drugs"

in this case, and arguing the balance of the sentencing factors identified in 18 U.S.C. § 3553(a)

has shifted in favor of release.[5]  Doc. No. 615.

The pending motion requires the Court to determine whether, having "consider[ed] the

factors set forth in [18 U.S.C. §] 3553(a)," Jones has identified "extraordinary and compelling

reasons" warranting a reduction in his sentence.  § 3582(c)(1)(A)(i).  The Court's assessment in

this regard is guided by the Policy Statement of the Sentencing Commission in § 1B1.13 of the

United States Sentencing Guidelines.  § 3582(c)(1)(A)(ii).  That statement permits a reduction in

sentence if "the court determines that" three conditions are met:  1) "extraordinary and

compelling reasons warrant the reduction"; 2) "the defendant is not a danger to the safety of any

other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and 3) "the reduction is

consistent with this policy statement."  U.S.S.G. § 1B1.13(1)(A), (2), (3).  The Application Notes

to § 1B1.13 explain that a defendant's medical condition will amount to an extraordinary and

compelling reason under § 1B1.13(1) if he is "suffering from a serious physical or medical

condition . . . that substantially diminishes [his] ability . . . to provide self-care within the

environment of a correctional facility and from which he . . . is not expected to recover."

---

any further response from the warden); Doc. No. 612 (not addressing jurisdiction or exhaustion).
The Court agrees that Jones has satisfied the jurisdictional requirements of § 3582(c)(1)(A)(i).
[5] The issues are amply briefed, and neither party has requested oral argument or a hearing, so the
Court resolves Jones's motion on the papers.

Jones is 38 years old and overweight; he suffers from diabetes and hypertension, though

he is not presently receiving medication or other treatment for either condition.[6]  Doc. No. 609-7

at 1, 4-5; Doc. No. 609-8 at 1-2.  As the doctor who submitted a declaration supporting Jones's

request correctly noted, according to the CDC, "[p]eople of any age" with "Type 2 diabetes

mellitus" "are at increased risk of severe illness from COVID-19."  CDC Conditions List; accord

Doc. No. 609-8 at 5.  Those who are overweight or who have hypertension or "Type 1 diabetes

mellitus," per the CDC, "might be at an increased risk for severe illness" should they contract

COVID-19.  CDC Conditions List.  However, the medical evidence Jones has submitted does not

permit the Court to assess the severity of his conditions or to conclusively determine whether he

is included among the categories of individuals the CDC suggests are especially medically

vulnerable to COVID-19.

Both Jones's papers and the supporting medical declaration refer to him as having

"diabetes mellitus," a diagnosis he apparently received only recently.  E.g., Doc. No. 609-8 at 1.

They do not specify whether his diabetes is Type 1 or Type 2—a distinction that matters as far as

the CDC's evaluation of COVID-related risk is concerned.  Based on a paragraph in the medical

declaration discussing studies of individuals with Type 2 diabetes who contract COVID-19, id. at

7, the Court infers that the medical records the doctor-declarant reviewed (but which were not

---

[6] Jones also identifies "possible chronic liver disease" as a relevant health condition.  Doc. No.
609-7 at 4; accord Doc. No. 609-8 at 2.  Though the CDC identifies "chronic liver disease,
especially cirrhosis," as a condition that "may increase" one's risk of serious illness from
COVID-19, the record does not establish Jones suffers from such a condition.  CDC, "People
Who Are at Increased Risk for Severe Illness," http://www.cdc.gov/coronavirus/ 2019-
ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 21, 2020)
(hereinafter "CDC Conditions List"); see Doc. No. 609-8 at 2, 7 (referencing one test in 2019
that suggested "abnormal liver function," noting "risk factors for chronic liver disease," but
merely opining that "[f]urther testing is necessary to confirm and evaluate the nature of this
condition").

provided to the Court) reflect a diagnosis of Type 2 diabetes.  If that inference is correct, then

Jones suffers from a condition that the CDC has identified as one which places him at increased

risk of severe illness, should he contract COVID-19.  The Court has previously found—and the

government in other cases has conceded—that individuals suffering from such a condition (that

is, one on the CDC's "are at risk" list, as opposed to one on the secondary "may be at risk" list)

have established an extraordinary and compelling reason permitting a sentence reduction under

the guidelines policy statement.  E.g., Browne, 2020 WL 3618689, at *4; see United States v.

Eze, No. 19-cr-10354, ECF No. 71 (D. Mass. Oct. 2, 2020) (reflecting government's

acknowledgement that a condition so identified by the CDC "qualifies as an 'extraordinary and

compelling reason' that could warrant compassionate release if other criteria are also met").

    As to Jones's other conditions, nothing in the record, including the medical declaration,

sheds any light on the extent to which Jones's weight presents a meaningful risk for him or on

the severity of his hypertension.[7]  Accordingly, while the Court does not minimize the

seriousness of the risk COVID-19 presents to those who are in prison, and especially to those

with various health conditions, on this record, the Court finds Jones has failed to establish

whether and to what extent his hypertension and weight should factor into this Court's analysis.

    Even if the Court were to find sufficient evidence in the record to establish that Jones's

diabetes is Type 2 (and, thus, included on the relevant CDC list of risk factors), and/or that his

other conditions were sufficiently serious to amount to extraordinary and compelling reasons

---

[7] The declaration describes Jones's body mass index as 26.9 without explaining when that measurement was taken, the extent to which it has fluctuated over time, or whether any effects or treatment result from his weight.  Doc.  No. 609-8 at 1-2.  The declaration also notes Jones's "chronic elevated blood pressure" that "is not currently being treated with medication," then goes on to opine that "his blood is poorly controlled based on current clinical guidelines for patients with diabetes" without explaining the basis for that conclusion or what it has to do with Jones's hypertension.  Id.

supporting his request, the Court would then proceed to weigh the § 3553(a) factors and consider whether Jones is a danger to the safety of any other person or to the community.  On both of these factors, the balance weighs heavily against Jones's request.

The government has persuasively identified a number of factors suggesting Jones does pose a danger to the community or others, including his association with a violent street gang, his role in the conspiracy for which he was convicted (not as a low-level street dealer, but as the manager of multiple stash houses), and the fact that he has committed multiple other drug-distribution offenses in the past (which suggests his criminal conduct has continued and, perhaps, increased over time despite prior convictions and sentences).  Doc. No. 612 at 4-6.  Jones has not meaningfully engaged with these facts or the very real and serious concerns they support regarding the important public safety consideration.  Rather, he suggests without substantial discussion that he will not pose a danger because his crime was a "non-violent drug offense," Doc. No. 609-7 at 5, that his prior convictions are "stale," Doc. No. 615 at 2, that he "merely dealt drugs" (while other members of the same "gang committed violent acts"), id., and that he "is older and more mature now," id.  The Court, however, is not inclined to ignore Jones's history as a recidivist drug offender, nor does it endorse the view that "merely deal[ing] drugs" poses no danger to others.  To the contrary, selling drugs as part of a violent street gang plainly endangers the addicted individuals purchasing drugs, harms the families of both the gang members and the drug purchasers, and threatens the safety of the community in which these transactions take place.  Nothing before the Court suggests an appreciation for these important considerations.  As such, the Court finds Jones has not demonstrated that he would not present a danger to others or to the community if he were released at this time, after serving just over half of the minimum sentence authorized by law for this offense.

Finally, Jones—a career offender—already is serving a sentence substantially lower than the one recommended by the advisory guidelines.  Though the Court commends Jones for seeking out educational opportunities while in prison and acknowledges the strong support he continues to have from family and friends, nothing he has presented to the Court would cause it to alter the manner in which it weighed the § 3553(a) factors at the time of his sentencing.[8]

Accordingly, under the totality of circumstances on the record before the Court, having carefully considered the factors identified in 18 U.S.C. § 3553, the safety of the public, and the other conditions listed in § 1B1.13 of the Sentencing Guidelines, the Court finds that a reduction in Jones's sentence is neither warranted nor consistent with the Sentencing Commission's Policy Statement.  Accordingly, Jones's motion for compassionate release (Doc. Nos. 598 and 609) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[8] Jones cites active COVID-19 cases at FCI Fort Dix following a transfer of inmates from another facility and urges that he is housed in dormitory with eleven other men and cannot practice social distancing there.  Doc. No. 619.  The Bureau of Prisons ("BOP") website confirms that there are presently 14 active cases of COVID-19 among inmates at Fort Dix and 6 such cases among staff.  See BOP, "COVID-19 Coronavirus," http://www.bop.gov/coronavirus/index.jsp (last visited Oct. 22, 2020) (detailing active cases and inmate test information for each BOP facility).  However, a memorandum submitted by Jones reflects that the prison is isolating inmates who have tested positive, keeping them out of the general population until they are medically cleared, reminding the population generally what symptoms to monitor and report, and requiring that all inmates wear face coverings.  Doc. No. 615-2.  Additionally, the fact that Jones shares a dormitory with eleven other men, without more (e.g., details regarding the size of the dormitory, the layout of beds, access to cleaning supplies, and exposure to others outside the unit), does not support a finding in his favor.